1  JULIAN BACH, Ca Bar No. 162421
   LAW OFFICE OF JULIAN BACH
2  7911 Warner Avenue
   Huntington Beach, California 92647
3  Telephone: (714) 848-5085
   Facsimile: (714) 596-6331
4
   Attorney for Plaintiff-Debtor-in-Possession,
5  PSG MORTGAGE LENDING CORP, a
   Delaware Corp.
6
7              UNITED STATES BANKRUPTCY COURT
8               NORTHER DISTRICT OF CALIFORNIA
9                  SAN FRANCISCO DIVISION

10 In re:                                  )  Adv. No. 22-ap-03007 DM
                                           )
11   PSG  MORTGAGE   LENDING   CORP.,  a)   Case No.  21-30592 DM
   Delaware Corporation,                   )
12                                         )  Chapter 11
              Debtor and Debtor-In-Possession )
13 _____)  **MOTION   FOR   SUMMARY**
   PSG MORTGAGE LENDING CORP., a Delaware)   **JUDGMENT;  MEMORANDUM   OF**
14 Corporation, Debtor and Debtor-In-Possession, )  **POINTS   AND   AUTHORITIES   IN**
                                           )  **SUPPORT THEREOF**
15            Plaintiff-Debtor,            )
                                           )  [FRBP 7056; FRCP 56]
16 v.                                      )
                                           )  Date:    April 22, 2022
17 LUKE   BRUGNARA   and   KATHERINE)       Time:    10:30 a.m.
   BRUGNARA,                               )  Place:   VIA ZOOM/AT&T TELE
18                                         )           Courtroom 17
              Defendants.                  )           U.S. Bankruptcy Court
19                                         )           450 Golden Gate Avenue
                                           )           San Francisco, CA 94102
20 _____)

21

22      TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY

23 JUDGE; DEFENDANT LUKE BRUGNARA, IN PRO PER; AND TO ALL INTERESTED

24 PARTIES:

25

26

27

1       COMES now Plaintiff-Debtor PSG MORTGAGE LENDING CORP. (the "Plaintiff-

2 Debtor"), which moves this Court for summary judgment on its claim for Declaratory Relief set

3 forth in its Complaint on file in this proceeding. The motion is brought pursuant to Rule 7056 of

4 the Federal Rules of Bankruptcy Procedure, Rule 56 of the Federal Rules of Civil Procedure, and

5 Rules 9013-1 and 7007-1 of the Local Bankruptcy Rules, on the grounds that based upon the

6 evidence presented, there is no genuine issue as to any material fact, and that the Plaintiff-Debtor

7 is entitled to judgment as a matter of law.

8       The motion is based upon the Notice of Motion and Motion, the accompanying

9 Memorandum of Points and Authorities, the Declarations of Philip Fusco and Christina Leigh and

10 exhibits attached thereto, the Request For Judicial Notice filed in support of the instant Motion,

11 all papers and records on file in this action, and on such further oral and documentary evidence

12 as may be presented at the time of the hearing.

13 Dated:  March 23, 2022                Respectfully submitted,
                                  LAW OFFICE OF JULIAN BACH

14

15                 By:  _____
                          Julian Bach

16                           Attorney for Plaintiff-Debtor,
                          PSG MORTGAGE LENDING CORP, a
                          Delaware Corp.

17

18

19

20

21

22

23

24

25

26

27

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. The Fluid Nature Of The BPVI Authorized Officer Of Record . . . . . . . . . . . . . 4

    B. The Secured Lienholders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C. The Adversary Proceedings Against The Lenders In The Brugnara Properties VI Bankruptcy Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D. The Lenders' Settlement Agreements In The Brugnara Properties VI Bankruptcy Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    E. The Completed Nonjudicial Foreclosure Sale Of The Sea Cliff Avenue Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. APPLICABLE STANDARD FOR GRANTING A MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. SUMMARY JUDGMENT IS MANDATED IN THIS ACTION . . . . . . . . . . . . . . . . . . . 9

    A. Neither Brugnara Nor BPVI Have Standing To Challenge The Completed Nonjudicial Foreclosure Sale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B. Summary Judgment Is Appropriate Where The Claims Have Been Previously Settled . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C. Brugnara's Claims of a Void Nonjudicial Foreclosure Sale Are Likewise Without Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    D. Brugnara's Assertions Are Barred By Judicial and Equitable Estoppel . . . . . . . . . 16

    E. Brugnara's Remaining Assertions Are Without Merit . . . . . . . . . . . . . . . . . . . 18

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

# TABLE OF AUTHORITIES

**Cases**

Page

Allen v. McCurry,
    449 U.S. 90, 101 S.Ct. 411 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 106 S.Ct. 2505 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Butner v. United States,
    440 U.S. 48, 99 S.Ct. 914 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cadlerock Joint Venture, L.P. v. Lobel,
    (2012) 206 Cal.App.4th 1531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Carroll v. Acme-Cleveland Corp.,
    955 F.2d 1107 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Celotex Corp. v. Catrett,
    477 U.S. 317, 106 S.Ct. 2548 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Cusano v. Klein,
    264 F.3d 936 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Donald v. Polk County,
    836 F.2d 376 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Dosier v. Miami Valley Broadcasting Corp.,
    656 F.2d 1295 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Farries v. Stanadyne/Chicago Div.,
    832 F.2d 374 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lasky v. International Union (UAW),
    638 F.2d 954 (6th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lohorn v. Michal,
    913 F.2d 327 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ii

Malkoskie v. Option One Mortgage Corp.,
    188 Cal.App.4th 968 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Matsushita Electric Industrial Co. v. Zenith Radio Corp.,
    475 U.S. 574, 106 S.Ct. 1348 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Montana v. United States,
    440 U.S. 147, 99 S.Ct. 970 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Nash v. UCSF Medical Center,
    2013 WL 4487503 (N.D.Cal. Aug. 19, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

New Hampshire v. Maine,
    532 U.S. 742, 121 S.Ct. 1808 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Palomar Mobilehome Park Ass'n v. City of San Marcos,
    989 F.2d 362 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Patrick v. Jasper County,
    901 F.2d 561 (7th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pension v. Terminal Transport Co.,
    634 F.2d 989 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sierra Switchboard Co. v. Westinghouse Elec. Corp. (In re Sierra Switchboard),
    789 F.2d 705 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Stoll,
    252 B.R. 492 (9th Cir. BAP 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,
    549 U.S. 443, 127 S.Ct. 1199 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Whiting Pools, Inc.,
    462 U.S. 198, 103 S.Ct. 2309 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Valley Liquors, Inc. v. Renfield Importers, Ltd.,
    822 F.2d 656 (7th Cir. 1987), cert denied, 484 U.S. 977, 108 S.Ct. 488 (1987) . . . . . . . . . 8

iii

Vella v. Hudgins,

    20 Cal.3d 251 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Wainwright Bank & Trust Co. v., Railroadmans Federal Sav. & Loan Assoc.,

    806 F.2d 146 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Wallace v. Greer,

    821 F.2d 1274 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Federal Statutes**

11 U.S.C. §323 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11 U.S.C. §541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**California Statutes**

California Civil Code §2924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

28 U.S.C. §157(b)(2)(O) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 7

**Federal Rules**

Federal Rule of Bankruptcy Procedure, Rule 7056 . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rule of Civil Procedure, Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**California Constitution**

Article XV of the California Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Treatises**

4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 170, p. 3312 . . . . . . . . . . . . . . . 11

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

Plaintiff-Debtor PSG Mortgage Lending Corp (the "Plaintiff-Debtor") voluntarily commenced its underlying Chapter 11 bankruptcy case on August 25, 2021 (the "Bankruptcy Case"). The sole asset of the estate is the vacant residential real property located at 224 Sea Cliff Avenue, San Francisco, CA (the "Sea Cliff Avenue Property"). The Plaintiff-Debtor is currently seeking approval of a sale of the Sea Cliff Avenue Property, free and clear of all interests and claims.

The Sea Cliff Avenue Property has been the sole asset at the center of five (5) bankruptcy filings dating back to 2009. This Court has presided over each of the bankruptcy cases and is intimately familiar with the prior owner, Brugnara Properties VI ("BPVI"); as well as Katherine "Kay" Brugnara ("Kay Brugnara"), its former sole officer and shareholder; and, Luke Brugnara ("Luke Brugnara"), Kay Brugnara's estranged husband and on again, off-again officer of BPVI. The most recent bankruptcy by the former owner is Chapter 7 Case No. 17-30501, which was commenced by Brugnara Properties VI on May 22, 2017 as a Chapter 11 proceeding, converted to a Chapter 7 proceeding on April 4, 2018, and remains open and pending before this Court as of this date (the "Brugnara Properties VI Bankruptcy Proceeding").

Efforts and a sale agreement was entered into by the Chapter 7 Trustee in the Brugnara Properties VI Bankruptcy Proceeding to sell the Sea Cliff Avenue Property to a new buyer, a sale which would have paid off all of the voluntary liens secured by the aforementioned deeds of trust. However, the closing of the sale was delayed for various reasons including disputed tax liens secured against the Sea Cliff Avenue Property and objections, appeals, and challenges to the sale by Luke Brugnara.

After obtaining a Stay Relief Order from this Court in the Brugnara Properties VI Bankruptcy Proceeding, on August 13, 2020, a nonjudicial foreclosure sale of the Sea Cliff Avenue Property took place, with title to the Sea Cliff Avenue Property reverting back to entity

1

named PSG Capital Partners, Inc. The Trustee's Deed Upon Sale was recorded on October 9, 2020 as document no. 2020028282. (Declaration of Philip Fusco filed concurrently herewith (the "Fusco Decl."), Exhibit A attached thereto).

On August 20, 2021, title to the Sea Cliff Avenue Property was transferred by PSG Capital Partners, Inc. to the Plaintiff-Debtor by Grant Deed recorded on August 25, 2021, document no. 2021136349. (Fusco Decl., Exhibit B attached thereto).

Undeterred, on September 29, 2020, Luke Brugnara filed a lawsuit entitled <u>Luke Brugnara v. Paul Greenfield, Dakota LP, CHL, PSG Capital et al</u> in the Superior Court of the State of California for the County of San Francisco, Case No. CGC-20-586853 (the "State Court Action"). The State Court Action names a number of Defendants, including Secured Creditors/lienholders Paul Greenfield ("Greenfield"), Dakota Note LLC, CHL, and PSG Capital, seeking to re-litigate various loan claims already settled and compromised by the Defendants during the Brugnara Properties VI Bankruptcy Proceeding, and seeking to Quiet Title to the Sea Cliff Avenue Property in favor of Brugnara. The State Court Action was removed to this Court by the Debtor on December 3, 2021 (Adversary Proceeding Case No. 21-03065-DM) in furtherance of the Plaintiff-Debtor's goal of selling the Sea Cliff Avenue Property free and clear of all claims, liens and encumbrances.[1] On February 25, 2022, hearings were conducted in Adversary Proceeding Case No. 21-03065-DM on both Luke Brugnara's Motion to Remand and Greenfield's Motion For Summary Judgment. As of this date, the matters remain under submission with this Court.

This instant Adversary Proceeding was filed by the Plaintiff-Debtor on February 25, 2022, asserting a single cause of action, seeking judicial determination that the Plaintiff-Debtor, and not any other party, holds full and clear title, right and/or interest in the Sea Cliff Avenue

---

[1] *See* Adversary Proceeding Case No. 21-03065-DM pending before this Court, which includes a full copy of Luke Brugnara's Complaint.

1 Property, and does so specifically to the exclusion of BPVI and Luke or Kay Brugnara.

2 On March 4, 2022, Luke Brugnara filed a document titled "Response and Opposition to
3 Request for Declaratory Relief" (Doc #9) (the "Answer" herein). In deference to Luke Brugnara's
4 *pro se* status, Plaintiff deems the Response to be an Answer to the Complaint rather than seek any
5 default for failure to file a proper answer in this proceeding.

6 The Answer sets forth Luke Brugnara's latest, totally unfounded collateral attack against
7 this Plaintiff-Debtor along with the other BPVI lienholders by asserting that the August 13, 2020
8 nonjudicial foreclosure was "void and unenforceable under CA Law (CA Civil Code 2924)…"
9 for various reasons. (*See generally* Answer). However, these assertions are without any factual
10 or legal basis.

11 More specifically, as is discussed more fully herein below, there is no merit to the Answer
12 and this Motion should be granted forthwith because:

13 • The Brugnaras do not have standing to challenge the completed foreclosure of the
14 Sea Cliff Avenue Property;

15 • The nonjudicial foreclosure was conducted properly and in full compliance with
16 California law[2];

17 • Luke Brugnara's assertion that the foreclosure notice(s) set forth an "improper
18 amount due, as legally required under CA Law (Article 15, California
19 Constitution)" is wrong and has already been settled[3]; and,

20 • Brugnara's assertions are barred under the doctrines of equitable and judicial
21 estoppel.

22

23

_____

24 [2] *See generally* Declaration of Christina Leigh (the "Leigh Decl.") and Exhibits attached thereto
25 filed concurrently herewith.

26 [3] *See* Plaintiff-Debtor's Request For Judicial Notice ("RJN") filed concurrently herewith,
Exhibits 4, 5 and 6 attached thereto.

27 3

1    Simply put, the Plaintiff-Debtor, and not any other party, holds full and clear title, right

2    and/or interest in the Sea Cliff Avenue Property and thus summary judgment in favor of the

3    Plaintiff-Debtor on the sole cause of action for Declaratory Relief is appropriate. Plaintiff-Debtor

4    therefore respectfully requests that the Court grant the instant Motion and enter judgment in its

5    favor as to all issues and claims raised in this proceeding.

6    **II.    BACKGROUND FACTS.**

7    For the Court's ease of reference, the Plaintiff-Debtor resubmits the following

8    indisputable facts to recap prior events as were set forth and presented in a "Joint Statement of

9    Facts" filed in this Court in Adversary Case No. 17-3071.[4]

10   **A.    The Fluid Nature Of The BPVI Authorized Officer Of Record.**

11   BPVI acquired the Sea Cliff Avenue Property in 2002.The Brugnaras, by and through

12   BPVI, then spent the next 15 years mining the property's equity for cash to support their lavish

13   lifestyle, and then using the bankruptcy court to delay and hinder their lenders' collection efforts.

14   In May 2018, Kay Brugnara claimed that she has been the sole officer and director of

15   BPVI since January 2, 2010. (Joint Statement of Facts, ¶54b). At her deposition in November

16   2018, Kay Brugnara acknowledged that her official position vis-à-vis BPVI would change

17   depending on whether or not Luke Brugnara was around; and, that Luke Brugnara was not (at that

18   time) an officer of BPVI because he was unavailable due to his incarceration. (Joint Statement of

19   Facts, ¶¶56-57).

20   In other words, Luke Brugnara was not an officer of BPVI during the period of his

21   incarceration, from approximately May, 2014 through November 25, 2019. Thus, at all times

22   relevant to this motion, Kay Brugnara was the sole officer of BPVI.

23   _____

24   [4] Given the Court's familiarity of this matter, and in the interest of keeping this brief, Plaintiff-Debtor asks that

25   the Court take judicial notice of the "Joint Statement of Facts in support of their respective motions for summary

26   judgment" (the "Joint Statement"). [Case N. 17-ap-3071; Docket No. 68], which is fully incorporated herein by
     reference. _See_ **RJN Exhibit 1**.

27   4

**B.    The Secured Lienholders.**

Although there have been quite a few loans extended to and paid off by BPVI secured by the Sea Cliff Avenue Property, there are only five (5) loans relevant to this disposition of this proceeding, as follows:

1.    The Wells Fargo Bank [5] first deed of trust, dated April 2007. (RJN, Exh 1, ¶154);

2.    The Saxe Mortgage Company [6] deed of trust, dated June 2013. (RJN, Exh 1, ¶156);

3.    The Dakota Note, LLC third deed of trust, dated July 2015. (RJN, Exh 1, ¶157);

4.    The PSG Capital fourth deed of trust, dated November 2016. (RJN, Exh 1, ¶157); and

5     The California Home Loans ("CHL") [7] fifth deed of trust, dated December 2016. (RJN, Exh 1, ¶158).

**C.    The Adversary Proceedings Against the Lenders In The Brugnara Properties VI Bankruptcy Proceeding.**

In October 2017, during the Brugnara Properties VI Bankruptcy Proceeding, BPVI caused to file adversary proceedings against its junior lenders: 1) Adv. Pro. No. 17-0348 against PSG Capital Partners (also naming Fusco and DeVito); and, 2) Adv. Pro. No. 17-0349 against Dakota Note (also naming Greenfield, and others). The complaints in each of these cases effectively mirrors the allegations found in Luke Brugnara's State Court Action. *See* RJN Exhibits 2 and 3, respectively.

---

[5] This first deed of trust was originated by World Savings and Loan and later acquired by Wells Fargo Bank. *See* RJN, Exh 1, ¶153.

[6] The second deed of trust was originated by Saxe Mortgage Company was assigned by Saxe and ultimately vested with Paul Greenfield, the movant. *See* RJN, Exh 1, ¶156.

[7] The CHL fifth deed of trust (RJN, Exh 1, ¶153) was likewise assigned to Paul Greenfield during the pendency of the BPVI bankruptcy in or about April 19, 2019 (RJN, Exh 8), then further assigned by Greenfield to PSG Capital Partners, Inc. on or about July 9, 2020. (RJN, Exh 9). It is under this instrument that the nonjudicial foreclosure was conducted.

**D.   The Lenders' Settlement Agreements In The Brugnara Properties VI Bankruptcy Proceeding.**

On April 3, 2018, the BPVI bankruptcy case was converted to a Chapter 7 proceeding. [Case No. 17-30501, Docket No. 155]. The Chapter 7 proceeding remains open and, as such, the Chapter 7 Trustee holds the sole authority to act on behalf of BPVI.

After months of inactivity in the adversary proceedings, the Chapter 7 Trustee agreed to settle both adversary proceedings with the respective defendants/lenders. The Settlements were approved by Court Orders which are now final. The Settlements cover all of the named secured creditors and their principals. *See* RJN Exhibits 4 and 5, respectively.

On or about August 20, 2019, Kay Brugnara likewise settled with the estate, both individually and in her capacity as the sole shareholder and officer of BPVI, including an agreement to drop all pending appeals of the bankruptcy court rulings and vacate the Sea Cliff Avenue Property, which she did. *See* RJN Exhibit 6.

**E.   The Completed Nonjudicial Foreclosure Of The Sea Cliff Avenue Property**.

On May 20, 2020, after the buyer backed out of the sale in the Brugnara Properties VI Bankruptcy Proceeding due to pending appeals, this Court entered an Order Granting Stipulated Relief From the Automatic Stay (the "Stay Relief Order"). [Case No. 17-30501, Docket No. 500]. *See* RJN Exhibit 7. This Order authorized the secured creditors to proceed with nonjudicial foreclosure of the Sea Cliff Avenue Property.

After entry of the Stay Relief Order, PSG Capital was in a quandary. Prior to the 2017 bankruptcy filing, PSG Capital had not, as yet, recorded a Notice of Default. As such, both the Saxe/Greenfield second and the Dakota Note third deeds of trust, which had filed Notices of Default, were ripe to foreclose out PSG Capital's interests.

On or about July 9, 2020, PSG Capital agreed to receive assignment of the CHL fifth deed of trust, which had also seasoned its Notice of Default, and foreclose from that position, thereby preserving its interests in the Sea Cliff Avenue Property. True and correct copies of the April 19,

6

2019 assignment from CHL to Greenfield, and Greenfield's subsequent July 9, 2020 assignment to PSG Capital are attached hereto as RJN Exhibits 8 and 9, respectively.

It is under the CHL deed of trust that the August 13, 2020 nonjudicial foreclosure was conducted and how PSG Capital came to hold title under the Trustee's Deed, recorded as Document No. 2020028282, recorded on October 9, 2020. *See* RJN Exhibit 10; Fusco Decl., Exhibit A attached thereto.

On August 20, 2021, title to the Sea Cliff Avenue Property was transferred by PSG Capital Partners, Inc. to the Plaintiff-Debtor by Grant Deed recorded on August 25, 2021, document no. 2021136349. (Fusco Decl., Exhibit B attached thereto).

## III. **APPLICABLE STANDARD FOR GRANTING A MOTION FOR SUMMARY JUDGMENT.**

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056. Rule 56 (c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R.Civ. P. 56 (c); *see also,* Carroll v. Acme-Cleveland Corp., 955 F.2d 1107, 1114 (7th Cir. 1992).

In 1986, the United States Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The primary

7

1 | purpose for granting a summary judgment motion judgment is to avoid unnecessary trials when
2 | there is no genuine issue of material fact in dispute." Farries v. Stanadyne/Chicago Div., 832 F.2d
3 | 374, 378 (7th Cir. 1987), quoting Wainwright Bank & Trust Co. v. Railroadmens Federal Sav.
4 | & Loan Assoc., 806 F.2d 146, 149 (7th Cir. 1986). The burden is on the moving party to show
5 | that no genuine issue of material fact is in dispute. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514;
6 | *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. "If
7 | the evidence is merely colorable or is not significantly probative, summary judgment may be
8 | granted." *Anderson*, 477 U.S. at 249-250, 106 S.Ct. at 2510 (citations omitted); *see also,* Valley
9 | Liquors, Inc. v. Renfield Importers, Ltd., 822 F.2d 656, 659 (7th Cir. 1987), *cert. denied*, 484 U.S.
10 | 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

11 | The party seeking summary judgment always bears the initial responsibility of informing
12 | the court of the basis for its motion, identifying those portions of the "pleadings, depositions,
13 | answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of
14 | a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. at 2553. Once the motion is
15 | supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of
16 | law, a party opposing the motion may not rest upon the mere allegations or denials in its
17 | pleadings, rather, its response must show that there is a genuine issue for trial. Anderson, 477 U.S.
18 | at 248, 106 S.Ct. at 2510; Celotex, 477 U.S. at 323, 106 S.Ct. at 2553; Matsushita, 475 U.S. at
19 | 587, 106 S.Ct. at 1356; Patrick v. Jasper County, 901 F.2d 561, 564-66 (7th Cir. 1990).
20 | Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is
21 | determinative of the outcome under applicable law. Donald v. Polk County, 836 F.2d 376, 379
22 | (7th Cir. 1988); Wallace v. Greer, 821 F.2d 1274, 1276 (7th Cir. 1987). "Summary judgment is
23 | not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to
24 | determining if there is a genuine issue for trial." Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.
25 | 1990). Rule 56 "requires the nonmoving party to go beyond the pleadings" and produce evidence
26 | of a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. In order for an issue to
27 |

be genuinely in dispute, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S.Ct. at 2510.

**IV.    SUMMARY JUDGMENT IS MANDATED IN THIS ACTION**.

As noted herein above, the Answer sets forth Luke Brugnara's latest, totally unfounded collateral attack against this Plaintiff-Debtor along with the other BPVI lienholders by asserting that the August 13, 2020 nonjudicial foreclosure was "void and unenforceable under CA Law (CA Civil Code 2924)…" for various reasons. (*See generally* Answer). However, these assertions are without any factual or legal basis.

First and foremost, it must be noted that the United States Supreme Court has "long recognized that the basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law." Traverlers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443. 450, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). This principle was given its clearest statement in Butner v. United States, 440 U.S. 48, 99 S.Ct. 914 (1979), which held that because "[p]roperty interests are created and defined by state law," *Id.* at 55, 99 S.Ct. 914, "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.*

**A.    Neither Brugnara Nor BPVI Have Standing To Challenge The Completed Nonjudicial Foreclosure Sale**.

Here, summary judgment is warranted because none of the Brugnaras – but particularly not Luke Brugnara - have standing to challenge the completed foreclosure.

The operative foreclosed CHL loan was the result of a negotiated forbearance fee, extended in December 2016 by CHL to Brugnara Properties VI, secured by a deed of trust in which Brugnara Properties VI is identified as the trustor, and executed by Kay Brugnara in her capacity as President of BPVI. As noted above, the indisputable facts are that Luke Brugnara was *not* a shareholder of BPVI since January 2000 and was furthermore incarcerated during this

9

1  period, and therefore *not* an officer of the borrower BPVI.

2      Once BPVI filed for bankruptcy protection on May 22, 2017, any interest in or claims

3  related to the Sea Cliff became Avenue Property of the bankruptcy estate. And then, once the

4  Trustee was appointed and the bankruptcy case was converted to Chapter 7, it was the Trustee's

5  prerogative to manage, litigate, and/or dispose of any and all assets of the estate, *including* any

6  litigable rights. After the bankruptcy case was converted to a Chapter 7, Ms. Janina Hoskins, the

7  duly appointed Trustee, became the legally authorized custodian of BPVI. In re Stoll, 252 B.R.

8  492 (9th Cir. BAP 2000) ("Stoll"); *see also* 11 U.S.C. §323.

9      Property of the estate includes "all legal or equitable interests of the debtor in property as

10  of the commencement of the case." 11 U.S.C. § 541(a); *see* United States v. Whiting Pools, Inc.,

11  462 U.S. 198, 103 S.Ct. 2309 (1983). Likewise, any causes of action that accrue to the debtor

12  prior to the filing of the bankruptcy petition are property interests included in the estate. Sierra

13  Switchboard Co. v. Westinghouse Elec. Corp. (In re Sierra Switchboard), 789 F.2d 705, 707 (9th

14  Cir. 1986) (citations omitted). A cause of action need not be formally filed prior to the

15  commencement of a bankruptcy case to become property of the estate. Cusano v. Klein, 264 F.3d

16  936 (9th Cir. 2001). After a claim becomes part of the bankruptcy estate, only the bankruptcy

17  trustee, as representative of the estate, has the authority to prosecute or settle the cause of action.

18  Stoll at 495; *See* 11 U.S.C. §323.

19      Regarding this matter, the bankruptcy trustee was authorized to – and *did* – settle the

20  adversary proceedings against the lenders, even over BPVI's objections, as the causes of action

21  were property of the estate. (*See* RJN, Exhibits 2 and 3 attached thereto). The bankruptcy court

22  approved the settlements. (*See* RJN, Exhibits 4, 5 and 6 attached thereto).

23      Kay Brugnara, though served with the Summons and Complaint in this Adversary

24  Proceeding, has not filed any responsive pleadings in this matter. Plaintiff-Debtor can only

25  speculate that this is likely due to the two sets of Court approved settlements with CHL – the

26

27                                    10

Chapter 7 Trustee's settlement on behalf of BPVI, and Kay's own August 2019 individual settlement. (*See* RJN, Exhibits 4, 5 and 6 attached thereto).

Luke Brugnara has historically and alternatively argued that he has standing as the now-President of BPVI. Even if he is *now* the duly authorized officer of the BPVI entity, this case fails as a matter of law and summary judgment is warranted. Luke Brugnara was not the President of BPVI between March 2014 until January 2020 –shortly after his release from prison. As its current President, he is bound by all authorized actions taken before his term, and specifically the Settlement Agreements. Further, the Brugnara Properties VI Bankruptcy Proceeding remains open and the Sea Cliff Avenue Property has not been abandoned, so any claim that BPVI may have – and it has none – would still be under the purview of the Chapter 7 Trustee.

Individually, Luke Brugnara's argument as the "EQUITABLE TITLE OWNER of 224 Sea Cliff Ave, SF" has already been dispatched by this Court. As noted, the CHL loan was made between the Borrower, Brugnara Properties VI, and the lenders. As such, Luke Brugnara does not hold any *individual* claims against any of these defendants or standing to challenge the completed foreclosure.

As such Luke Brugnara still cannot defend this suit. A party without the legal right to enforce an obligation under substantive law is not a real party in interest. Luke Brugnara is now nothing more than an interloper.

**B.**     **Summary Judgment is Appropriate Where The Claims Have Previously Been Settled**.

In addition to the above, although the clear record of the Sea Cliff Avenue Property's chain of title and Luke Brugnara's lack of standing are sufficient to preclude further review of any "title claims", the record reflects further reasons to find a dearth of "material triable facts."

As detailed above, CHL was a party to the settlement agreement with BPVI. (*See* RJN, Exhibit 4). The Settlement was approved by Court Order and is now final. This Court had full authority to approve the compromise between the Trustee and the defendants, and did so, thereby

11

fully resolving the matter. ("A federal court has the equitable power to summarily enforce a settlement reached by the parties in a case pending before it." <u>Nash v. UCSF Medical Center</u>, 2013 WL 4487503 (N.D.Cal. Aug. 19, 2013). The final order approving the settlement was equivalent to a final judgment for res judicata purposes. "A judgment entered ... by consent or stipulation, is as conclusive a ... bar as a judgment rendered after trial." (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 170, p. 3312). As such, the settled claims are precluded from further litigation. "Under res judicata, a final judgment on the merits of an action **precludes the parties or their privies from relitigating issues that were or could have been raised in that action**." <u>Allen v. McCurry</u>, 449 U.S. 90, 94, 101 S.Ct. 411 (1980). [Emphasis added]. "California, as most states, recognizes that the doctrine of res judicata will bar not only those claims actually litigated in a prior proceeding, but also claims that could have been litigated." <u>Palomar Mobilehome Park Ass'n v. City of San Marcos</u>, 989 F.2d 362, 364 (9th Cir. 1993).

Here, Luke Brugnara's new assertion that the parties "[c]onducted the non-judicial trustee sales of Sea Cliff for an improper amount due, as legally required under CA Law (Article 15, CA Constitution)" fails because any claims of usury were not usurious under California Law and are fully covered by Kay's and BPVI's settled claims. (*See* RJN, Exhibits 4, 5 and 6 attached thereto).

Notably, Article XV of the California Constitution, Section 1, as amended, sets the maximum allowable interest rate on a loan or forbearance, above which the rate is legally usurious. Under Cal. Const., Art. XV, §1, this maximum rate "shall not exceed **the higher of** (a) 10 percent per annum or (b) 5 percent per annum plus the prevailing Federal Reserve Bank of San Francisco's rate on the 25th day of the month preceding the earlier of (I) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance...." [Emphasis added].

As it applies here, the CHL Note was set at the legal maximum rate of 10 percent per annum. (*See* RJN Exhibit 11). As such, the claims of usury fail as a matter of law.

Contrary to Luke Brugnara's assertion, the Settlement also precludes the newly devised

12

1  "claim" because the issue of the CHL loan's validity was settled. The ensuing foreclosure,

2  therefore, is likewise immune from claims of an improper foreclosure sale.

3        In Malkoskie v. Option One Mortgage Corp., 188 Cal. App. 4th 968 (2010), the California

4  Court of Appeals found that where the parties entered into a settlement - in that case, a stipulated

5  judgment for unlawful detainer – the parties could not go back and challenge any "irregularities

6  in the sale." Id. at 972. There, the Plaintiffs filed a civil suit alleging, inter alia, "declaratory relief,

7  quiet title, cancellation of trustee's deed, willful wrongful foreclosure." In reaching its decision,

8  the California Court of Appeal rejected the plaintiffs' contention that the issue of whether the

9  trustee had the legal authority to proceed with the foreclosure was not embraced or resolved by

10 the unlawful detainer action. Id. at 973-76. The court explained that "the validity of Wells Fargo's

11 title had to be resolved in the unlawful detainer action" and "by stipulating to judgment against

12 them, plaintiffs conceded the validity of Wells Fargo's allegations that the sale had been duly

13 conducted and operated to transfer 'duly perfected' legal title to the property." Id. at 974, 976.

14 If this is true of an unlawful detainer settlement, where, as the California Supreme Court

15 explained, an unlawful detainer "proceeding is summary in character; . . . ordinarily, only claims

16 bearing directly upon the right of immediate possession are cognizable." Vella v. Hudgins, 20 Cal.

17 3d. 251, 255 (1977), how much truer is it, here, where a Court-approved settlement is reached in

18 an Adversary Proceeding?

19       Most importantly, the CHL Note is demonstrably NOT usurious under California Law.

20       And, under both California and federal law, res judicata bars a subsequent suit if the same

21 cause of action has been previously adjudicated in a suit between the same parties. (Montana v.

22 United States 440 U.S. 147, 153, 59 L. Ed. 2d 210, 216-217, 99 S. Ct. 970 (1979)). It is also

23 settled that a court-approved settlement will operate to bar subsequent suits. (Dosier v. Miami

24 Valley Broadcasting Corp. 656 F.2d 1295, 1298 (9th Cir. 1981); Laskey v. International Union

25 (UAW), 638 F.2d 954, 956-957 (6th Cir. 1981); Penson v. Terminal Transport Co., 634 F.2d 989,

26 992 (5th Cir. 1981)).

27                          13

## C. Brugnara's Claims Of a Void Nonjudicial Foreclosure Sale Are Likewise Without Merit.

Luke Brugnara has a compelling and forceful manner when making an argument. However, like most of his arguments, he offers little more than rank speculation to support his vehement objections and does not provide any legal citation upon which to defeat the relief sought.

Brugnara argues that the August 2020 nonjudicial foreclosure was replete with errors and therefore void. He asserts, that PSG's foreclosure trustee, in derogation of their duties and requirements under California law. Luke alleges:

> "Specifically, PSG, through their trustee:
> 1.) Did NOT give required notice to the trustors pursuant to CA Law, as they did NOT post the non-judicial trustee sale notice on 224 Sea Cliff Avenue, SF, as required.
> 2.) Did NOT give required notice to the trustors pursuant to CA Law, as they did NOT send by US Mail certified notice of the non-judicial trustee sales to the trustors, as required.
> 3.) Conducted the non-judicial trustee sales of Sea Cliff with shill/unqualified bidders.
> 4.) Conducted the non-judicial trustee sales of Sea Cliff for an improper amount due, as legally required under CA Law (Article 15, CA Constitution)."

As shown, it was CHL who had properly started its foreclosure using the services of the Foreclosure Company, Inc., a duly appointed Trustee under the CHL Deed of Trust. There were two nonjudicial foreclosures related to the Sea Cliff Avenue Property: one on July 14, 2020, the second on August 13, 2020. In advance of each sale, the foreclosure trustee, The Foreclosure Company Inc., filed and served a Notice of Trustee's Sale on all parties in interest – Kay Brugnara, BPVI, and the State of California Franchise Tax Board copies of the Notice of Sale at their last known addresses. In full compliance with California law, these Notices of Trustee's Sale were sent by both first-class and certified mail. (*See generally* Leigh Decl.).

14

1       In advance of the July 14, 2020 sale, The Foreclosure Company Inc., pursuant to Cal.

2   Civ. Code § 2924 procedures caused to have Notices served, published and posted. *Leigh*

3   *Decl.*: ¶¶ 3-6; Exhibits 1-3. The first sale, conducted July 14, 2020, resulted in the sale to

4   a third-party, Alvaro Galindo. Mr. Galindo successfully bid $71,000. Mr. Galindo tendered

5   two cashier's checks drawn on San Mateo Credit Union, totaling $73,000 and was issued

6   a Receipt of Funds. *Leigh Decl.*: ¶7; Exhibit 4. It was only then that Mr. Galindo realized

7   that he had purchased the Sea Cliff Avenue Property subject to some $15,000,000 in senior

8   mortgages and a two million-dollar IRS tax lien. Mr. Galindo somehow convinced his bank

9   to not honor the cashier's checks. *Leigh Decl.*: ¶8.

10      As a result of the failed sale, the foreclosure offer caused to have new Notice of Sale

11  filed and a second sale date was set for August 13, 2020. *Leigh Decl.*: ¶9, Exhibit 5. Once

12  again, in full compliance with California law, the Foreclosure Company Inc. sent copies of

13  the Notice of Sale to all required recipients via certified mail, published the sale, and posted

14  notice of the same on the Sea Cliff Avenue Property. *Leigh Decl.*, ¶¶10-11, Exhibits 6 and

15  7. The second foreclosure sale was conducted, no bidders were present, and the sale resulted

16  in title to the Sea Cliff Avenue Property reverting back to the beneficiary – PSG Capital.

17  *Leigh Decl.*: Exhibits 3 and 7.

18      The posting of the foreclosure notices referenced above is documented with

19  <u>photographic evidence</u>. *Leigh Decl.*: ¶12.

20      Further, as dispelled above, Luke Brugnara argues that the nonjudicial foreclosure

21  was "in an improper amount" due to the application of an usurious interest rate. The note

22  rate of 10% is *not* usurious as a matter of law. Moreover, the "winning bid" by the

23  beneficiary was $50,000 – far below any claimed principal or interest. *Leigh Decl.*, ¶12. The

24  amount was therefore no improper.

25      Simply put, as a matter of law, Luke Brugnara's assertions in his Answer are

26  inaccurate and/or patently false. Without any viable defense to the claims, summary

27                                                  15

1    judgment is warranted and the motion should be granted forthwith.

2       **D.**    **Brugnara's Assertions Are Barred By Judicial and Equitable Estoppel.**

3          Furthermore, after more than two years of arguing that his interests were completely

4    separate and apart from that of BPVI and therefore BPVI should not be burdened with his

5    personal tax debts, Luke Brugnara took the position that he was not a borrower, but an

6    equitable owner as argued by the IRS, and therefore had independent interest in Sea Cliff.

7          As the Court may recall, Luke Brugnara filed multiple motions and declarations

8    asserting that he has no current connection to BPVI, including but not limited to his

9    Declarations, as follows:

10         On February 19, 2018, Luke Brugnara declared, in relevant part (*See* RJN Exhibit

11   12):

12         "2.    BPVI is a unique and separate, independent entity...and functions wholly
     separate from any other entity or person....; and,
13

14         10.    BPVI owes none of Luke Brugnara's tax obligations as it is an independent
     and separate, unique entity...."
15

         On April 11, 2019, Luke Brugnara declared, in relevant part (*See* RJN Exhibit 13):
16
           "1.       I am the husband of Kay Brugnara, President and sole shareholder
17         of Brugnara Properties VI, a California corporation ("BPVI");
           9.       No agency, Federal or State, has ever made any claim of nominee
18         status, or alter ego status of BPVI throughout any of the prior proceedings;

19         10.      BPVI has never commingled assets with me, has always filed
20             separate tax returns, and has always maintained its records as a separate
               and distinct entity;
21
           11.      Kay Brugnara as sole shareholder (since 2005) and sole officer of
22         BPVI has arranged financing; and,

23         12.      The tax amounts are inaccurate and disputed by me individually,
24         but have nothing to do with BPVI!"

25         Thereafter, on August 29, 2019, Luke Brugnara shifted positions, declaring, in relevant

26   part (*See* RJN Exhibit 14):

27                                              16

5.     "I REJECT these "settlements". I REJECT any 'settlement',
independent of Kay Brugnara, as I preserve all of my rights as Party-in-
interest under CA community property (lease) law, and as a legal
guardian/parent of minor children occupying Sea Cliff (and as BPVI officer)."

And, further, on May 18, 2020, Luke Brugnara made a convoluted U-turn by arguing: "If BAP rules in favor of the US Attorneys, then Greenfields (sic) loan to BPVI is NOT secured by equity in real property (Sea Cliff) that can be foreclosed…because [Luke] Brugnara, the Equitable Title Owner is NOT a borrower, nor a co-borrower of Greenfield's debt/loan…." (*See* RJN Exhibit 15).

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (internal quotation marks omitted). "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749–50 (citation and internal quotation marks omitted).

"[S]everal factors typically inform the decision whether to apply the doctrine in a particular case." *Id.* at 750 (citations and internal quotation marks omitted). "First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotation marks omitted). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. "In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id.*

In applying these factors to the instant matter, we can see that this is the text-book example of when to apply the doctrine. Here, Luke Brugnara should not gain an unfair advantage over

17

1  Plaintiff by taking diametrically opposing positions when it suits him. Summary Judgment should
2  be granted.

3  **E.   Brugnara's Remaining Assertions Are Without Merit.**

4       Finally, in the balance of his Response/Answer, Luke Brugnara trots out a new (and
5  incorrect) motive for PSG Capital's actions and his newfound claim of "credit theft." Notably,
6  even if any of his baseless claims were true, they represent pecuniary harms and are neither claims
7  of title nor are they relevant to the relief sought.

8       Nevertheless, the Plaintiff-Debtor feels compelled to address these spurious claims so as
9  not to prevent them of more oxygen to grow.

10      *"PSG also makes false statements in its complaint to this Court, in a clear attempt to set*
11  *a framework to recover monetary damages from its title insurance company..."* (Answer, p. 2)

12      Even if this were true, it is hard to imagine how this provides a title claim, particularly for
13  Luke Brugnara. Contrary to his assertions, however, any and all claims were *already* settled by
14  PSG Capital with its title company resulting in the IRS lien being paid and expunged – a
15  $2,000,000 windfall to the Brugnaras.

16      *"Regarding Brugnara's claims to Sea Cliff, Brugnara has won every motion thus far in*
17  *CA Superior Court against PSG and the defendants."* (Answer, p. 3).

18      This is patently false. Neither PSG Capital nor its principals or predecessors were ever
19  served with the State Court complaint and have never made any appearance in that action. Despite
20  this, Luke Brugnara artfully attempts to spin the fact that motions by other defendants in that
21  action were denied on procedural technicalities into wins on the merits. As detailed in
22  *Greenfield's Replies to Brugnara's Opposition to Motion for Summary Judgment and Other*
23  *Recent Filings* [Case No. 21-AP-03065, Docket No. 41] and evidenced by its accompanying
24  Exhibit Nos. 11 and 12, the State Court denied the various other Defendant motions for improper
25  service, and not due to any of Luke Brugnara's meritorious claims.
26

27                                            18

*"PSG has stolen for 18 months, and continues to steal from Brugnara, his personal credit for millions of dollars, while running up delinquent charges in Brugnara's name"* (Answer, p. 3).

Supposing, *arguendo*, that Luke Brugnara's claims of PSG Capital stealing his personal credit are true <u>and</u> that he could show proximate harm from such theft. Such claims are pecuniary claims and do not affect title to the Sea Cliff Avenue Property. Under California law, the completion of a nonjudicial foreclosure sale of the real property extinguishes all rights and interests to the real property of the junior lienholders and the borrower-trustor (or its successor in interest). <u>Cadlerock Joint Venture L. P. v. Lobel</u> (2012) 206 Cal.App.4th 1531, 1536, 143 Cal.Rptr.3d 96.

Simply put, while these claims might somehow survive the bankruptcy and may even be better suited for adjudication in State Court, they do not implicate or cloud the title to the Sea Cliff Avenue Property. Therefore, these claims do not preclude the relief sought by the instant action and motion, nor would these claims prevent the sale of the Sea Cliff Avenue Property free and clear of all liens.

## V. CONCLUSION.

There is a qualified buyer for the Sea Cliff Avenue Property who is set to close escrow, but Luke Brugnara is making a hail mary, last-ditch effort to derail the sale. He argues that the lenders took advantage of an unsophisticated housewife, that his claims to the Sea Cliff Avenue Property have merit because the underlying loans were "unenforceable and illegal"; that he is the current president of BPVI; and, that he has individual standing due to his unrelinquished "equitable" interest in the Sea Cliff Avenue Property.

As set forth above, none of this has merit to the disposition of this proceeding. The indisputable facts reflect that there are three sets of iron-clad settlements 2019, by and through BPVI's duly appointed Chapter 7 Trustee, as approved by this Court, and, re-confirmed by Kay Brugnara, its sole shareholder and its then-president. These settlement agreements preclude any

19

collateral attack on the basis of illegality of the loans, and the CHL Note dispels any claims of usury under California law. Moreover, Luke Brugnara has no standing to raise individual claims to title to the Sea Cliff Avenue Property and/or to challenge the completed foreclosure sale.

WHEREFORE, for all of the above-stated reasons, the Plaintiff-Debtor respectfully requests that this Court enter an order of Summary Judgment in its favor, together with any other relief the Court may grant.

Dated: March 23, 2022

Respectfully submitted,
LAW OFFICE OF JULIAN BACH

By: _____

JULIAN BACH, ESQ.
Attorney for Plaintiff-Debtor,
PSG MORTGAGE LENDING CORP., a
Delaware Corporation